496 So.2d 1194 (1986)
STATE of Louisiana
v.
Joe COCKERHAM.
No. 86-KA-180.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
John M. Mamoulides, Dist. Atty., James Maxwell, Asst. Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Louise Korns, of counsel, Office of the Dist. Atty., Gretna, for plaintiff-appellee.
Martha E. Sassone, Gretna, for defendant-appellant.
Before CHEHARDY and KLIEBERT, JJ., and NACCARI, J. Pro Tem.
KLIEBERT, Judge.
The defendant, Joe Cockerham, was charged by bill of information with five counts of armed robbery.[1] After trial by a twelve-person jury he was found guilty as charged on all counts. Defendant was sentenced to ninety-nine years at hard labor on each count, to be served without benefit of parole, probation or suspension of sentence. The sentence on count two was made consecutive to the sentences on the other counts, which were made concurrent.
Defendant has appealed alleging five assignments of error. However, as the first four assignments were not addressed in defense brief they are deemed abandoned on appeal. Hence, we address only the remaining assignment. Uniform Rules-Courts of Appeal, Rule 2-12.4; State v. Martin, 472 So.2d 91 (La.App. 5th Cir. 1985).
On June 21, 1985 Carol Cabirac, Eleanor Smith, Myra Ledet, Adne Dinwiddie and Barbara Luquette were employees of Crane's Shoe Store at 4426 Trenton Street in Metairie. About 11:30 a.m. Ledet entered the restroom in the rear of the store, leaving her purse up front where employees normally stored personal possessions. Cabirac, Dinwiddie and Smith remained near the sales counter, talking among themselves, as no customers were present. *1195 Luquette, the store manager, was in her office.
The shop bell rang, indicating someone was entering the store. Cabirac approached the front door and observed three black men rushing in. The lead man (subsequently identified as Cockerham) pulled a chrome-plated pistol from the waistband of his pants and shoved Cabirac back towards the sales counter. Shouting obscenities, the gunman instructed everyone to rest their heads on the counter. Cabirac and Dinwiddie immediately complied. Smith, who was facing the rear of the store and had not seen the perpetrators enter, began to turn; the gunman struck her across the face with the butt of the pistol, destroying her left eye. Smith collapsed across the counter. The gunman then threw Cabirac and Dinwiddie to the floor behind the counter.
Luquette, hearing the shop bell and an exclamation of surprise by Cabirac, left her office and walked towards the sales counter to see who had entered the store. She saw the perpetrators standing over her co-employees and, appreciating the danger of the situation, ran out the front door into the parking lot. The gunman gave chase and ordered her to stop, screaming "... bitch I don't want to kill you." Terrified, Luquette froze; the gunman caught her by the hair, dragged her back into the store, and threw her to the floor near the other employees. Meanwhile, Ledet emerged from the restroom and, upon hearing the obscenities and threats, realized a robbery was in progress. She slipped out of the store undetected and called the police from a neighboring store.
The perpetrators ordered the employees to remove their jewelry and throw it over the counter. Smith, who was only semi-conscious as a result of the blow to her face, was unable to comply; one of the perpetrators forcibly removed her jewelry and shoved her off the counter onto the floor. After gathering the jewelry and all purses, including Ledet's,[2] the gunman ordered Cabirac to open the register. She was unable to do so immediately. The enraged gunman shouted obscenities and fired a bullet into the register. It opened and the perpetrators grabbed the currency from within, dropping much of the change onto the floor. Cabirac was thrown back to the floor and everyone was instructed to remain where they lay.
After several minutes Luquette crawled around the counter and discovered the perpetrators had fled. She immediately locked all doors. Cabirac called the police while Luquette and Dinwiddie assisted Smith. Although investigating officers combed the scene for fingerprints, none were found. However, through subsequent investigation, Joe Cockerham became a suspect in the case. Upon presentation of a photographic lineup Cabirac positively identified Cockerham as the gunman; at a subsequent physical lineup Cabirac, Luquette and Dinwiddie also identified Cockerham.[3]
In the sole assignment briefed on appeal defendant contends his aggregate sentence of 198 years at hard labor without benefit of parole, probation or suspension constitutes excessive punishment in violation of the Eighth Amendment of the United States Constitution and Article I, Section 20, of the Louisiana Constitution of 1974.
Article I, Section 20 of the Louisiana Constitution provides in part "No law shall subject any person ... to cruel, excessive or unusual punishment ..." A sentence is excessive, even though within prescribed statutory limits, if it is grossly disproportionate to the severity of the crime and is nothing more than the purposeless and needless imposition of pain and suffering. State v. Davis, 449 So.2d 452 (La.1984).
In determining whether a sentence is excessive the appellate courts consider *1196 the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. See State v. Davis, supra; State v. Bonanno, 384 So.2d 355 (La.1980). A sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. Davis, supra; Bonanno, supra.
The goal of the legislature in providing a range of punishment under La.R.S. 14:64 and statutory guidelines for the determination and imposition of sentences under La. C.Cr.P. art. 894.1 is to "tailor the individual sentence imposed on the particular defendant to the particular circumstances of the case ..." resulting in the reservation of maximum sentences for the most egregious and blameworthy offenders within a class. State v. Telsee, 425 So.2d 1251, 1253 (La. 1983).
In the instant case, the trial judge imposed the maximum sentence on each count and made the sentence on the second count consecutive to the others,[4] giving the following extensive reasons:
"The Court has heard all the evidence presented at the trial.... Evidence of defendant's prior criminal activities was presented, including his three prior convictions. The defendant, having admitted the crimes and pled guilty ... was sentenced and imprisoned, being released sometime in 1984. Less than one year after being released defendant committed the armed robbery of the Crane Shoe Store ...
All five victims of the robbery ... described in detail brutality and viciousness exhibited by the defendant during the robbery. The defendant dragged Ms. Luquette by her hair and pushed her under a counter. He pushed and shoved Ms. Cabriac and grabbed her by the back of the neck and struck her in the head. He also pistol-whipped Mrs. Smith with such intensity that her left eye was destroyed. Defendant's acts were the grossest form of insult to the individual person, psyche and dignity of the victims, as well as an affront to society in general.
I have searched for any mitigating factors on behalf of the defendant. But search as I might, I have been unable to find any. Instead, only aggravating factors could be found ... Defendant, by his voluntary wanton actions and past criminal conduct has demonstrated that he is a threat to our society and has forfeited his right to live free in this society.
Consequently, for these reasons, The Court sentences defendant to the maximum sentence of imprisonment for ninety-nine years, without benefit of parole, probation or suspension of sentence on each of the five counts.
Having considered the provisions of Article 883 of the Code of Criminal Procedure, the Court directs that the sentences on Counts 1, 3, 4 and 5 run concurrently....
However, because of defendant's prior criminal record, his lack of regard for our laws, his lack of regard for the rights of his fellow human beings, and because of the particular heinous nature of this crime and defendant's brutality to the victims involved, and the absence of any mitigating circumstances, The Court directs that defendant's sentence on Court (sic) 2 run consecutively with the sentence imposed on the other four counts.
....It being the intention of the Court that defendant serve for these crimes a total of one hundred and ninety-eight (198) years ... Any lesser sentence would deprecate the seriousness of defendant's crime...."
It is apparent from the record that the trial judge meticulously considered the sentence to be imposed. The factual basis for the considerations taken into account by the trial judge is readily evident upon review *1197 of the record. We need only add that the defendant's prior convictions included two feloniessimple burglaryand that the defendant orchestrated and was the chief perpetrator of the instant offense.
Given such extensive compliance with La. C.Cr.P. art. 894.1, our task is simply to determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. See State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984). Adopting the reasons set forth by the trial judge in toto, and considering his particularized justification for making the sentence on the second count consecutive, we conclude the resulting sentence is not excessive.
Since the ninety-nine year sentences are not excessive individually, it is likewise not excessive to have one count of the five served consecutively. In upholding a similar sentence in State v. Mosley, 466 So.2d 733, 736 (La.App. 4th Cir.1985) writ denied 468 So.2d 1202 (La.1985), the court made the following observation:
"Whether his sentence is 99 years or 297 years he will be in jail for the rest of his life unless he is pardoned. Remanding for resentencing under these circumstances is an academic exercise which has no practical benefit to anyone. It is the type of exercise which subjects judges and lawyers to well deserved criticism for wasting time on technicalities."
We agree with the observation. Moreover, pure and simply, under the circumstances involved here, we believe the defendant should be imprisoned for life. Whether the sentence has a label on it of 99 years or 198 years is immaterial.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Charges against a co-defendant were severed on motion of the defendant.
[2] In Ledet's purse were a wallet, a checkbook, credit cards, $100.00 cash and her car keys. None of the items were recovered. The other employees suffered similar losses.
[3] Luquette and Dinwiddie did not identify Cockerham from the photographic lineup. Neither Ledet nor Smith saw the perpetrators and hence could not make an identification.
[4] The second count charged the defendant with the armed robbery of Smith.